UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

UNITED STATES OF AMERICA

                                       **DECLARATION**

    V.

                                       06-CR-652

ZEINAB TALEB-JEDI,

        Defendant
----------------------------------------------------X

VIVIAN GEMBARA, declares under penalty of perjury that the following is true and correct to the best of my recollection:

1. I am a lawyer in Denver, Colorado. For four years, I served as an officer in the U.S. Army Judge Advocate General's Corps. Between March 2003 and March 24, 2004, I was stationed in Iraq. My rank was Captain. I lived and worked at six different locations during my time in Iraq, including the cities of Balad, Ad Dujayl, Daquq, Tarmiya, Samarra and Tuz.

2. In April and May of 2003, I was the JAG lawyer for the Third Brigade Combat Team, of the Fourth Infantry Division. In that capacity, I assisted the Division, led by then Major General Raymond Odierno, in its negotiations of the cease-fire agreement with the Iranian dissident group known as the MEK, or the PMOI.

3. In my view, the MEK had no leverage in negotiating these agreements. Given the overwhelming military power of the Coalition Forces, the MEK had no choice but to comply with our demands.

4. MEK members were confined to Camp Ashraf in Iraq following the completion of the cease-fire agreement. Ashraf residents were obligated to comply with the terms of surrender set out in the cease-fire agreement. One of the terms of surrender was that all members of the MEK be interviewed by U.S. officials. The purpose of these interviews was to garner information that would facilitate the establishment of a safe and secure environment in Iraq.

5. Following the U.S. invasion, Iraq was run first by the Office for Reconstruction and Humanitarian Assistance, led by U.S. General Jay Garner. In June 2003, this office was transformed into the Coalition Provisional Authority (CPA) and L. Paul Brenner, a U.S. diplomat, became the U.S. Administrator of Iraq and the chief executive authority in the country. The CPA was essentially U.S. run and

controlled all major functions in Iraq, including the criminal justice system, until the transfer of power in June 2004.

6. As a JAG officer stationed in Iraq, I worked closely with U.S. military personnel and government officials, as well as Iraqi judges, lawyers and other government officials, to help revise and reconstruct the Iraqi justice system. I had many meetings with Iraqi judges and lawyers, as well as local attorney groups. The lawyers I met in Iraq were well organized and professional. Iraqi lawyers were very much aware of a detainee's right to counsel and many offered their services to represent individuals detained by the Coalition Forces. In fact, in early 2004, Iraqi lawyers routinely gathered outside of the detention facilities at Camp Abu Ghraib and Camp Cropper, and demanded access to clients and potential clients being held inside the detention facilities.

I declare, pursuant to 28 U.S.C. §1746, under penalty of perjury and under the laws of the United States of America, that the foregoing is true and correct to the best of my recollection.

DATED: DENVER, CO
May 1, 2009

Vivian Gembara